# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALDOLPHUS R. GAINES,<br><br>        Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br><br>        Defendant. | Civil Action No. 12-1481 (BJR)<br><br>MEMORANDUM OPINION ON MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT |

This action is before the Court on a Motion to Dismiss (Dkt. #4) (hereinafter "Def.'s Mot.") by Defendant, the District of Columbia (hereinafter "the District"),[1] and a Motion for Summary Judgment by Plaintiff, Aldophus R. Gaines (Dkt. #8) (hereinafter "Pltf.'s Mot.").[2] Gaines claims that the District of Columbia infringed on his registered copyright through the creation of a derivative work. *See* Compl. (Dkt. #1) at 1-2. The District, however, asserts that Gaines' claim is not protected under the Copyright Act. Having reviewed the filings, the Court finds that Gaines fails to state a claim for which relief can be granted, and dismisses this action. The Court's reasoning follows:

## I. BACKGROUND

Plaintiff Gaines holds a registered copyright, which he received on January 20, 1999. *See* Compl. Ex. B (Certificate of Copyright and copy of GIRLP) at 1. The copyright is for an illustrated instructional manual entitled *Get It Right Lotto Paper* (hereinafter "GIRLP"). *Id.* As

---

[1] The District's motion is styled as a "Motion to Dismiss or, in the Alternative, for Summary Judgment." As the Court determines that it is unnecessary to address the motion as one for summary judgment, it will be considered only as a motion to dismiss.

[2] Gaines also filed a Motion to Quash the District's motion. *See* Mot. to Quash (Dkt. #6). This motion will be addressed below.

described in GIRLP, "Get It Right Lotto Paper" consists of betting slips for 3-digit and 4-digit lottery drawings designed for the handwritten input of selected numbers. *Id.* at 7. The manual touts a number of benefits over standard betting slips, including the "revenue and marketing" potential of printing advertisements on the betting slips. *Id.* at 8-9.

From 1998 to 2012, Gaines met, corresponded, or spoke with employees of the District of Columbia Lottery Board (hereinafter "DCLB") on a number of occasions. On April 11, 2012, he e-mailed Wanda Gross, whom he identified as being with the D.C. Lottery. Compl. Ex. D at 9. He stated that his proposal had been "presented to the D.C. Lottery advertising agency without feedback or acknowledgement," and requested contact information to "pursue dialogue" regarding his proposal. *Id.* He further noted that "during the recent Mega-Million [*sic*] large pay-off, the D.C. Lottery did affix advertising to its betslips." *Id.* at 9. Indeed, as noted by Gaines, on March 29, 2013, the D.C. Lottery announced that it would print "commemorative Mega Millions tickets" to mark a "historic $640 million jackpot." *See* Compl. Ex. C (Washington Post article on commemorative tickets) at 1.

Gaines filed his Complaint in this action on September 7, 2012. *See* Compl. Gaines claims that the District's printing of commemorative Mega Millions® tickets constituted an unauthorized derivative work and infringed his copyright in GIRLP, in violation of the Copyright Act, 17 U.S.C. §§ 101 *et seq. Id.* at 1-2. Gaines requests a judgment in the amount of $487,324 to compensate him for the alleged unauthorized copyright use and his loss of advertising revenue. *Id.* at 4.[3]

This case was reassigned to the undersigned judge on May 30, 2013.

---

[3] Gaines also requests that the DCLB "consider mediation to discuss implementing" GIRLP. Compl. at 4.

2

## II. THE DISTRICT'S MOTION TO DISMISS

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint if a plaintiff has failed to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the allegations within the complaint. *In re Interbank Fund Corp. Sec. Litig.*, 668 F. Supp. 2d 44, 47-48 (D.D.C. 2009) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The court "must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Bailey v. Verizon Commc'ns, Inc.*, 544 F. Supp. 2d 33, 36 (D.D.C. 2008).

In resolving a motion to dismiss, a court may take into consideration any documents either attached to or incorporated into the complaint itself. *Brown v. District of Columbia*, 919 F. Supp. 2d 105, ___ (D.D.C. 2013) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

To survive a Rule 12(b)(6) motion, the complaint must plead sufficient facts, taken as true, to provide "plausible grounds" that discovery will reveal evidence to support the plaintiff's allegations. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not need detailed factual allegations, but a plaintiff must provide "more than labels and conclusions" to provide the grounds of his entitlement. *Twombly*, 550 U.S. at 555.

On a motion to dismiss, courts are not bound to accept as true legal conclusions couched as factual allegations. *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Furthermore, while a complaint by a *pro se* litigant such as Gaines must be held to "less stringent standards than formal pleadings by lawyers," the *pro se* complainant must still "plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Lawson v. Pepco*, 721 F. Supp. 2d 1, 4 (D.D.C. 2010) (internal citations and punctuation omitted).

**B. Discussion**

   *1. Ideas are not subject to copyright protection*

Gaines' claim for copyright infringement arises out of the District's use of commemorative images on its Mega Millions® lottery game tickets in early 2012. The District correctly argues that Gaines' claim stems from an idea conceived by him and described through narrative and illustrations in GIRLP. Def.'s Mot. at 1. As the District points out, under 17 U.S.C. § 102(b), an idea cannot be the subject of copyright protection. *Id*. Since the idea of placing a commemorative image on a lottery ticket is not a protected element of GIRLP, and since Gaines has failed to identify any other protected elements of GIRLP upon which the District infringed, Gaines has failed to state a claim, and this action must be dismissed under Rule 12(b)(6). *Id.* at 4-5.

"Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). Among the rights exclusive to the owner of a copyright is the exclusive right to any derivative works based on his copyrighted work. 17 U.S.C. § 106(2). Under 17 U.S.C. § 501, "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright or right of the author." 17 U.S.C. § 501.

Under the principle known as the idea/expression dichotomy, while "copyright assures authors the right to their original expression," it does not give anyone the exclusive right to ideas.

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350 (1991). On the contrary, it "encourages others to build freely upon the ideas and information conveyed by a work." *Id.* This principle is codified in the Copyright Act by Section 102(b): "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated or embodied in such work." 17 U.S.C. § 102(b).

Gaines' Complaint is unclear as to how, exactly, the District infringed upon his copyright in GIRLP; he merely asserts that the March 29, 2012 commemorative Mega Millions® ticket is a "derivative work[]" allegedly based on the work in GIRLP. Compl. ¶ 1. In his response to the District's motion, Gaines is only slightly more specific, claiming that the District used GIRLP "business plans" on March 30, 2012, presumably by producing Mega Millions® tickets bearing commemorative images. Pltf.'s Mot. at 7.

In claiming that the District used "business plans" from GIRLP, Gaines alleges that the District somehow violated his copyright in GIRLP by "implement[ing] GIRLP as revenue generating business initiative." Pltf.'s Mot. at 7. While it is unclear exactly what Gaines means, it would appear that Gaines refers to the "revenue and marketing benefits" listed in GIRLP. *See* Compl. Ex. B at 9. That list includes the suggestion that the betting slips "can be used as advertisement by presenting your state lottery operation name and/or the vendor name in several formats." *Id.* Gaines' "business plan," then, is the *idea* of using advertising images on a lottery ticket.

Under 17 U.S.C. § 102(b), Gaines' "business plan" is not protected under the Copyright Act. Facts and ideas—including ideas couched as "business plans"—are never subject to copyright. *See Harper & Row, Publ'rs v. Nation Enters.*, 471 U.S. 539, 556 (1985). Therefore,

even if the District did get the idea of using advertising images on a lottery ticket as a source of revenue from Gaines, it would not be a violation of Gaines' copyright, because the idea could not be the subject of a copyright in the first place.

> 2. *There is no substantial similarity between Gaines' copyrighted work and the District's lottery ticket*

In his response to the District's motion to dismiss, Gaines also alleges that the District "used GIRLP illustrations" on March 30, 2012. Pltf.'s Mot. at 7. The image on the Mega Millions® ticket is so unlike any that appears in GIRLP that the Court is unclear whether Gaines really meant to say that the District copied an illustration from GIRLP to create a derivative work. Assuming that he did, however, the District argues that there is no direct evidence of copying, and the actual texts do not show the "substantial similarity" necessary for a claim of copyright infringement.[4]

To establish a claim for copyright infringement, two elements must be proven: 1) ownership of a valid copyright, and 2) the copying of constituent elements of the work that are original. *Feist*, 499 U.S. at 361. As plaintiffs can rarely provide direct evidence of copying, they may raise the inference of copying by demonstrating both that the alleged infringer had access to the protected work and that the works are substantially similar. *Nelson v. Grisham*, 942 F. Supp. 649, 651 (D.D.C. 1996). "Substantial similarity" turns on whether the "average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Whitehead v. CBS/Viacom, Inc.*, 315 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *Atkins v. Fischer*, 331 F.3d 988, 993 (D.C. Cir. 2003)) (internal punctuation omitted). When comparing works, the

---

[4] The District sets forth this argument in the context of its motion for summary judgment; however, as the Court may consider the documents attached to the Complaint in resolving the motion to dismiss, the Court will also consider the question of similarity between GIRLP and the March 2012 Mega Millions® ticket in the context of the motion to dismiss.

6

test for substantial similarity relies on the "total concept and feel" of the works, notwithstanding any differences between the copyrighted and allegedly infringing work. *Id.* (quoting *Atkins*, 331 F.3d at 993-94). "The focus of the substantial similarity inquiry is on the expression of an idea or fact, not on the similarity of the facts, ideas, or concepts themselves." *Id.* at 9 (internal citations and punctuation omitted). While questions of substantial similarity for copyright claims are often questions of fact for a jury, if the alleged infringing work lacks a sufficient similarity to even raise a question of fact, then the Court must dismiss. *Cf. Whitehead*, 315 F. Supp. 2d at 9 (advising summary judgment if substantial similarity is "merely colorable" or "not significantly probative").

As to Gaines' assertion that the District used "GIRLP illustrations" on its March 2012 Mega Millions® lottery ticket, a comparison of the ticket (Compl. Ex. A) with the images in GIRLP (Compl. Ex. B at 7-11) reveals absolutely no similarity between the illustrations. The illustrations in GIRLP are of manual-input (*i.e.*, handwritten) bet slip forms for three-digit and four-digit lottery games, and of payout charts for the same types of games. See Compl. Ex. B at 7-11. The image of a March 29, 2012 Mega Millions® ticket is of a ticket with a pre-printed five-digit lottery number, which, at the bottom of the ticket, bears the "commemorative" image of the words "$500 MILLION" surrounded by stars. Compl. Ex. A at 2. Over the image, the words "D.C. Lottery Commemorative Ticket played the world's largest jackpot!" appear, while "March 30, 2012 D.C. Mega Millions World's Largest Jackpot" is printed underneath the image. *Id.*

The attachments to Gaines' Complaint provide sufficient evidence to the Court to determine that there was no copyright infringement by the District as between Gaines' GIRLP

7

and the District's March 2012 Mega Millions® commemorative lottery ticket. Therefore, Gaines' claim for copyright infringement, the sole claim in his Complaint, is dismissed.

## III. GAINES' MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

The court will grant a motion for summary judgment if the pleadings and any affidavits or declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Gaines is not entitled to summary judgment

In his motion for summary judgment, Gaines makes several arguments asserting that he held discussions with the District to negotiate a contractual relationship for the implementation of GIRLP. Pltf.'s Mot. at 1. Specifically, Gaines asserts that the District "did not dispute or challenge that the Plaintiff offered the Defendant to negotiate implementation of GIRLP as revenue generating business initiative in a contractual relationship," [*sic*] and claims that the District's "act on March 30, 2012 to implement Plaintiff's GIRLP illustrations and business plans constituted acceptance of Plaintiff's offer to implement GIRLP . . . without finalizing contractual relationship or providing fair compensation by the Federal Acquisition Regulation." *Id.* at 1-2. Gaines' claims to a contractual relationship must fail for a number of reasons, set forth below.[5]

---

[5] The Court also notes that Gaines' motion for summary judgment fails to comply with the requirements of such a motion under Federal Rule of Civil Procedure 56 and Local Rule 7, in that the motion is not accompanied by a statement of material facts as to which Gaines claims there is no genuine issue. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h).

*1. Gaines cannot amend his Complaint through his opposition to the District's motion to dismiss*

In his brief in support of his motion for summary judgment, Gaines presents arguments in support of his contract claim, and cites to a number of sections from the FAR.[6] However, Gaines makes no mention of contract claims or the FAR in his Complaint. A plaintiff cannot amend his Complaint via an opposition brief to a motion to dismiss. *See Arbitraje Casa De Cambio v. United States Postal Serv.*, 297 F. Supp. 2d 165 (D.D.C. 2003) (citing *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000)). Gaines' Complaint concerns only his claim that the District infringed on his copyright in GIRLP; any alleged contract negotiations are not relevant to that claim. Therefore, Gaines' contract claims are not properly before the Court.

*2. The FAR is not applicable to any contract negotiations Gaines allegedly had with the District, and Gaines has not exhausted his remedies against the District for any contract claim*

Any reference to the FAR is irrelevant to this case. The FAR System was established "for the codification and publication of uniform policies and procedures for acquisition by all [federal] executive agencies." 48 C.F.R. § 1.101. The FAR applies to "acquisitions," which in the context of the FAR means "the acquiring by contract with appropriated funds of supplies or services (including construction) by and for the use of the Federal Government through purchase or lease." 48 C.F.R. § 2.101. A "federal agency" under the FAR is "any executive agency or any independent establishment in the legislative or judicial branch of the Government (except the Senate, the House of Representatives, the Architect of the Capitol, and any activities under the

---

[6] The sections to which Gaines refers appear to be out of date. *Compare* Pltf.'s Mot. at 3 (citing 48 C.F.R. § 15.501 as defining "Unsolicited proposal") *with* Federal Acquisition Regulation; Part 15 Rewrite, 62 Fed. Reg. 51,224, 51,256 (Sept. 30, 1997) (moving the definition of "unsolicited proposal" from 48 C.F.R. § 15.501 to 15.601) *and* Federal Acquisition Regulation; Definitions, 66 Fed. Reg. 2117, 2129 (Jan. 10, 2001) (removing the term from 48 C.F.R. § *15.601*, effective March 12, 2001).

Architect's direction)." *Id.* The DCLB is an agency of the District of Columbia, not a federal agency, and, therefore, is not subject to the FAR System.

Furthermore, as the District notes, under D.C. Code § 2-360.01 *et seq.*, a contractor who is aggrieved in connection with the solicitation or award of a contract with the District must first bring his claim before the District's Contract Appeals Board. *See* D.C. Code §§ 360.03-04 (2013). Therefore, because Gaines has failed to exhaust his remedies under the District's administrative review procedure, this Court lacks jurisdiction over any contract claims that Gaines may or may not have against the District. *See Jones & Assocs. v. District of Columbia*, 797 F. Supp. 2d 129, 136 (D.D.C. 2011) (declining to exercise jurisdiction over contract claims against the District of Columbia where plaintiffs could "seek relief through D.C.'s administrative contract review procedure or in D.C. courts.").

## IV. GAINES' MOTION TO QUASH

Gaines filed a Motion to Quash the District's motion to dismiss on October 24, 2012, in light of the District's failure to timely serve him with its motion such that he would have sufficient time to respond. *See* Mot. to Quash. Indeed, on October 23, 2012, the District filed a Notice alerting the Court to its error in service, and offering to re-file its motion. *See* Notice (Dkt. #5) at 1. In opposition to Gaines' motion to quash, the District stated that it would not object to Gaines filing his response within fourteen days of the corrected service (*i.e.*, October 23, 2012), in accordance with Local Civil Rule 7(b). *See* Opp. to Mot. to Quash (Dkt. #7) at 1-2. Gaines filed his response (and cross-motion) to the District's motion on November 2, 2012. *See* Response (Dkt. #9) (same document as motion at Dkt. #8).

As there has been no prejudice to either party by the District's initial failure to timely serve Gaines with its motion, Gaines' motion to quash is denied.

## V. CONCLUSION

**THEREFORE**, it is hereby **ORDERED**:

1) The District's Motion to Dismiss is **GRANTED**;

2) Gaines' Motion for Summary Judgment is **DENIED**; and

3) Gaines' Motion to Quash is **DENIED.**

An Order and Judgment consistent with this Memorandum Opinion will be issued.

August 21, 2013

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE